IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

DEBORAH SUE OSBORNE,

     Plaintiff,

v.                                    CIVIL ACTION NO. 1:05-0106

MOLLY LOHR-ROBINETTE,
individually and as Mayor
for Bramwell, the MUNICIPALITY
OF BRAMWELL, RANDALL PROFFITT,
individually and as a police
officer for Bramwell,

     Defendants.

<u>MEMORANDUM OPINION</u>

     Pending before the court are cross motions for summary
judgment filed by the parties.  After reviewing the record and
applicable case law, for the reasons discussed below, by
accompanying Judgment Order, the court grants defendants' motion
for summary judgment (Doc. No. 47) as to Counts I-VI of
plaintiff's Complaint and orders that this action be removed from
the active docket of the court.  Plaintiff's motion for partial
summary judgment (Doc. No. 44) is dismissed as moot.
Furthermore, the court dismisses, without prejudice, plaintiff's
state law claims, Counts VII-XIII of the Complaint.

I.  Factual and Procedural Background

     On July 7, 2003, plaintiff Deborah Osborne attended a town
council meeting in Bramwell, West Virginia.  (Doc. No. 49-1 at
13.)  The town's newly elected mayor, defendant Molly Lohr-
Robinette, presided over the meeting.  (Doc. No. 49-2 at 29.)  It

was the first such meeting of her term.  (Doc. No. 45-2 at 25.)
The mayoral race was very contentious and defendant Lohr-
Robinette won by only two votes.  (Doc. No. 49-2 at 24-25.)
Defendant Lohr-Robinette began her term as mayor aware of "talk
going around town" that her opponents were going to try to make
her term difficult.  (Id. at 24.)  At the meeting, there was
standing room only.  (Id. at 25.)  Plaintiff was sitting with a
group of the mayor's opponents, but defendant Lohr-Robinette
allegedly did not associate plaintiff with her adversaries until
plaintiff began speaking.  (Id.)

    For the first time in the history of Bramwell, defendant
Lohr-Robinette added two ten-minute question and answer sessions
to the town council meeting.  (Id. at 26.)  During those two
question and answer sessions, members of the public were allowed
to speak on any topic relevant to the city.  (Id. at 19.)
Defendant Lohr-Robinette requires that such comments be
"reasonable and . . . justified."  (Id.)  The amount of time that
citizens have to speak is limited by the number of citizens who
want to speak.  (Id. at 29.)

    During the first question and answer session at the July 7,
2003, town council meeting, a few citizens addressed defendant
Lohr-Robinette's handling of town finances.  (Id. at 31.)
Plaintiff interjected to voice her concerns about the same
matter.  (Id. at 6.)  After several increasingly antagonistic

comments by plaintiff which defendant Lohr-Robinette tried to address, defendant Lohr-Robinette ended the exchange by saying: "All your [sic] doing is continuing what you all have done and won't discuss this any further." (<u>Id.</u> at 7.) Defendant Lohr-Robinette admits that plaintiff was not in a rage, but asserts that she was taking "more than just a tone." (<u>Id.</u> at 36.)

While plaintiff tried to respond to this comment, defendant Lohr-Robinette summoned defendant Randall Proffitt, a police officer who was at the town hall, but who did not join the meeting until he heard "loud and obnoxious" noises coming from the room where the meeting was held.[1] (Doc. No. 45-2 at 26.) Defendant Lohr-Robinette called defendant Proffitt's name and defendant Proffitt asked plaintiff to leave. (Doc. No. 49-2 at 7.) Defendants agree that defendant Lohr-Robinette did not call plaintiff out of order before she was asked to leave. (<u>Id.</u> at 35.)

Plaintiff asked what she had done, and defendant Proffitt responded that he was only going to ask her to leave once and then would take her in for trespassing. (<u>Id.</u> at 7.) Plaintiff

---

[1] According to the criminal complaint signed by defendant Proffitt on the day of the meeting, defendant Lohr-Robinette asked him to attend the meeting "in case things got out of hand." (Doc. No. 49-3 at 8-9.) In his later deposition, however, defendant Proffitt denies being asked by defendant Lohr-Robinette to attend the meeting. (Doc. No. 45-2 at 25.) Defendant Lohr-Robinette similarly denies in her deposition that they had "any discussion" before the meeting. (Doc. No. 49-2 at 35.)

then agreed to leave.  (Id.)  When defendant Proffitt continued

to admonish her not to speak another word, plaintiff angrily

responded, "I'm not saying anything to you, Opie!"  (Id. at 8.)

Defendant Proffitt ordered plaintiff "out the door" twice

more before they left the building and continued their

interaction outdoors.  (Id. at 8.)  Upon being escorted from the

meeting by defendant Proffitt, plaintiff cursed at him, calling

him an "asshole" (Doc. No. 49-1 at 31) and allegedly also a "son

of a bitch" and an "Opie-Taylor-looking motherfucker."  (Doc. No.

45-2 at 29.)  Defendant Proffitt claims that in addition,

plaintiff looked at him in a "fierce kind of way" and that he

"asked her to leave a bunch" before arresting her.  (Doc. No. 45-

2 at 30.)  Defendant Proffitt admits that he decided to place

plaintiff under arrest based solely on the verbal exchange that

took place after plaintiff left the meeting.  (Doc. No. 45-2 at

29-30.)

After defendant Proffitt tried to place plaintiff under

arrest, she allegedly struck him in the chest and cried for help.

(Doc. No. 45-2 at 30; Doc. No. 49-2 at 8.)  People who were

attending the meeting came outside to witness the commotion.

(Doc. No. 49-1 at 31.)  Plaintiff was charged with disorderly

conduct in violation of W. Va. Code § 61-6-1b[2] and obstructing an

---

[2] Disorderly conduct is defined, in relevant part, as disturbing
the peace of others in a public place by:
        violent, profane, indecent or boisterous

officer in violation of W. Va. Code § 61-5-17.[3]  Based on the
criminal complaint, the magistrate found that there was probable
cause to arrest plaintiff on those charges.  (Doc. No. 49-3 at
8.)  The charges were dismissed when defendant Proffitt failed to
appear in court, because he was laid off from his job as a police
officer due to lack of funding.  (Doc. No. 45-2 at 50; Doc. No.
48 at 3.)

On February 9, 2005, plaintiff filed a Complaint in this
court against defendant Lohr-Robinette, the municipality of
Bramwell, and Randall Proffitt.  (Doc. No. 1.)  The Complaint
alleges five counts cognizable under 42 U.S.C. § 1983:  1)
unlawful conspiracy; 2) unlawful retaliation; 3) malicious

_____

> conduct or language or . . . the making of
> unreasonably loud noise that is intended to
> cause annoyance or alarm to another person,
> and [persisting] in such conduct after being
> requested to desist by a law-enforcement
> officer acting in his lawful capacity . . .

W. Va. Code § 61-6-1b(a).

[3]Obstructing an officer is defined as:
> Any person who by threats, menaces, acts or
> otherwise, forcibly or illegally hinders or
> obstructs, or attempts to hinder or obstruct,
> any law-enforcement officer, probation
> officer or parole officer acting in his or
> her official capacity is guilty of a
> misdemeanor and, upon conviction thereof,
> shall be fined not less than fifty nor more
> than five hundred dollars or confined in the
> county or regional jail not more than one
> year, or both.

W. Va. Code § 61-5-17(a).

prosecution/abuse of process; 4) municipal liability; and 5) false arrest.  (Id. at 3-7.)  The Complaint also alleges several state law claims: 1) violation of West Virginia public policy; 2) abuse of process/malicious prosecution; 3) outrageous conduct; 4) slander/defamation; 5) constitutional violations; 6) violation of the Open Government Proceedings Act; and 7) violation of West Virginia Code Section 55-7-9.  (Id. at 7-9.)

On August 15, 2006, plaintiff moved for partial summary judgment on the retaliation claim and the false arrest claim. (Doc. No. 45-1 at 1.)  Plaintiff argued that she is entitled to summary judgment because defendants removed her from the town meeting in retaliation for her constitutionally protected First Amendment activity.  (Id. at 5.)  Plaintiff also argued that defendant Proffitt unlawfully arrested her for constitutionally protected activity in violation of the Fourth Amendment.  (Id. at 8.)

On August 17, 2006, defendants moved for summary judgment on all claims.  Defendants argued that both defendant Lohr-Robinette and defendant Proffitt are protected by qualified immunity. (Doc. No. 48 at 3, 11.)  In addition, defendants argued that the town of Bramwell could not be held liable under § 1983 because the other defendants did not execute any of its policies or customs.  (Id. at 10.)

## II.  Summary Judgment Standard of Review

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.  Celotex, 477 U.S. at 322-23.  Generally speaking, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  If no facts or inferences which can be drawn from the circumstances will support the movant's claims, summary judgment is appropriate.

### III.  Discussion

#### A.  Defendant Molly Lohr-Robinette

Qualified immunity shields government officials performing discretionary functions from § 1983 suits brought against them in their individual capacity.  <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 306 (4th Cir. 2006).  Government officials are entitled to the qualified immunity defense unless the claim against them satisfies a two prong test:

> (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.

<u>Id.</u> (citations omitted).  The test is objective; therefore, courts generally should not inquire into the subjective or malicious intent of the government official.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815-19 (1982).  Because "qualified immunity is an entitlement not to stand trial or face the other burdens of litigation," <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001), the question of qualified immunity should ideally be resolved at the summary judgment stage.  <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003).

To determine whether a clearly established right exists, courts look to decisions by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.  <u>Robinson v. Balog</u>, 160 F.3d 183, 187 (4th Cir. 1998).

Page 8 of  22

There need not be a decision exactly on point in order for the plaintiff to prevail; rather, officers can be held liable if they had a "fair warning" in light of pre-existing law that their conduct violated a constitutional right.  Hope v. Pelzer, 536 U.S. 730, 739-40 (2002).

Turning to the first prong of the qualified immunity test, the court must examine relevant precedent to determine whether one of plaintiff's federal statutory or constitutional rights was violated.  In Collinson v. Gott, 895 F.2d 994, 997 (4th Cir. 1990), a divided Fourth Circuit panel held that the president of a board of county commissioners enjoyed official immunity and was entitled to summary judgment in a § 1983 action brought against him by a citizen whom he had ordered removed from a public meeting.  The public meeting was called specifically to discuss a proposed reorganization of the county government.  Id. at 995. Each speaker was limited to two minutes and was required to sign up on a master list.  Id. at 996.  The plaintiff, Collinson, complied with the signing up requirement and when called upon to speak, began complaining about a commissioner who had already publicly announced his position on the reorganization.  Id.  The defendant, Gott, twice told him that he did not consider Collinson's remarks to be on topic and once warned him that he was going to call him out of order.  Id.  Gott then called Collinson out of order and asked a deputy to have him removed

from the meeting. Id. Deputies were on hand at the meeting because Gott had received a threatening phone call prior to the meeting relating to the proposed reorganization. Id. The district court denied Gott's motion for summary judgment on the basis that he was not entitled to qualified immunity. Id. at 995.

On appeal before the Fourth Circuit, two judges, Judge Phillips and Judge Butzner, found that qualified immunity applied, while Judge Wilkinson found that absolute immunity applied. Id. at 997. Judge Phillips and Judge Wilkinson reversed the district court, holding that Gott was entitled to summary judgment based on the level of official immunity they applied, while Judge Butzner dissented. Id.

Both Judge Phillips and Judge Butzner agreed that at the time of the public meeting at issue in Collinson, the law was clearly established that First Amendment protections extend to speech at public meetings called by government officials for discussion of matters of public concern.[4] Id. at 1000 (Phillips,

_____

[4] In addition, several other courts, including the Supreme Court, have held that First Amendment protections apply to public meetings. See, e.g., City of Madison Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167 (1976)(school board meetings); Mesa v. White, 197 F.3d 1041 (10th Cir. 1999) (county commissioners meeting); White v. City of Norwalk, 900 F.2d 1421 (9th Cir. 1990) (city council meeting); Jones v. Heyman, 888 F.2d 1328 (11th Cir. 1989) (city commission meeting); Musso v. Hourigan, 836 F.2d 736 (2d Cir. 1988) (board of education meeting).

J., concurring); <u>id.</u> at 1011 (Butzner, J., concurring and dissenting).  However, they agreed that it was also established that government officials have the right to impose reasonable time, place, and manner restrictions on such meetings, as long as such restrictions are content-neutral.  <u>Id.</u> at 1000 (Phillips, J., concurring); <u>id.</u> at 1011 (Butzner, J., concurring and dissenting).  Content-based restrictions are permissible only to prevent the "substantive evils that [government] has a right to prevent."  <u>Id.</u> at 1000 (Phillips, J., concurring)(quoting <u>Schenck v. United States</u>, 249 U.S. 47, 52 (1919); <u>id.</u> at 1011 (Butzner, J., concurring and dissenting).

Judge Phillips found that the "disruption of the orderly conduct of a public meeting" is one such substantive evil that the government has a right to prevent.  <u>Id.</u> at 1000 (Phillips, J., concurring).  He further held as a matter of law that:

> a reasonably competent official in Gott's position would have known that while he could . . . rule Collinson out of order and evict him if he had reason to believe that necessary to avoid disruption of the orderly conduct of the meeting, he could not constitutionally do so if he had no reasonable basis for fearing disruption, or if his actual purpose was to prevent expression of Collinson's viewpoint on the reorganization issue.

<u>Id.</u> at 1000 (Phillips, J., concurring).  Judge Phillips thus acknowledged that <u>Harlow</u>'s "objective" test in this context nonetheless may require an inquiry into the government official's subjective intent, namely whether he or she intended to suppress

a viewpoint or merely prevent a disruption.  Id. at 1001
(Phillips, J., concurring); see also Monteiro v. City of
Elizabeth, 436 F.3d 397, 404 (3rd Cir. 2006); Hansen v. Bennett,
948 F.2d 399, 400 (7th Cir. 1991).  Where the defendant provides
a "plausible showing of the objective reasonableness of his
actions, including a proper motive or intent," the plaintiff must
provide specific evidence, rather than mere "conclusory
assertions of improper motive or intent," in order to survive
summary judgment.[5]  Id. at 1002 (Phillips, J., concurring).

Through her own statements and the statements of witnesses
at the meeting, defendant Lohr-Robinette has made a plausible
showing of the reasonableness of her actions, including that her
intent was merely to avoid disruption of the public meeting.
(See Docs. No. 49-1 at 4-7, 49-2 at 26, 34.)  Viewing the facts
in the light most favorable to plaintiff, this court is unable to
find that plaintiff has presented more than conclusory assertions
that defendant Lohr-Robinette had an improper motive when she
summoned defendant Proffitt to escort plaintiff from the meeting.
Plaintiff argues that defendant Lohr-Robinette's improper intent
is proven by the fact that she associated plaintiff with her
political opponents.  However, the undisputed evidence shows that

---

[5] Notably, the Seventh Circuit has essentially adopted Judge
Phillips' approach because it resolves the conundrum between
Harlow's objective test and those cases where the defendant's
"mental state is part of the definition of the wrong."  Hansen,
948 F.2d at 399 n.4.

defendant Lohr-Robinette did not silence or eject the other speakers who were critical of her handling of the town's finances, indicating that she did not intend to impose content-based restrictions.

Plaintiff further argues that defendant Lohr-Robinette's intent to censor plaintiff is revealed by the fact that Lohr-Robinette ejected plaintiff although she did not speak out of turn and only spoke during the public comments period.  Again, given the full context of plaintiff's comments at the meeting, this amounts to a mere conclusory assertion of improper intent. The recording of the meeting reveals that plaintiff's tone was extremely hostile and agitated, and that she interrupted defendant Lohr-Robinette several times while Lohr-Robinette tried to address her concerns.  (Doc. No. 45 Ex. A.)  In addition, it is undisputed that plaintiff spoke for approximately 1-2 minutes on a topic that had been discussed for several minutes already. Furthermore, the meeting was heavily attended, and there were presumably others who were waiting to speak on other subjects during the short ten minute public comments period.[6]

---

[6] Plaintiff's counsel asked defendant Lohr-Robinette whether she has ever run out of time during the 10 minute public comment period either during that meeting or subsequent meetings and she answered "no."  (Doc. No. 49-2 at 39.)  However, given that this was the first meeting of her term and the first public comment period of the meeting, it is unfair to assume that she knew that time was not an issue.

Taken together and viewed in the light most favorable to plaintiff, these facts do not provide any evidence that defendant Lohr-Robinette intended to suppress criticism of her handling of the city's finances.  Rather, they show that she acted reasonably to prevent a disruption of the public meeting.  See Collinson, 895 F.2d at 1000-03 (Phillips, J., concurring).  As Judge Wilkinson points out in his concurrence in Collinson, "public meetings inevitably attract a goodly number of garrulous people. . . . I shudder to think how long some public meetings will drag on if speakers can threaten § 1983 suits unless they are heard to the end."  Id. at 1006 (Wilkinson, J., concurring).

Because there is no genuine dispute over the facts at issue with regard to defendant Lohr-Robinette's intent, the court holds that her decision to eject plaintiff from the meeting was a reasonable time, place, and manner restriction, and therefore not a violation of plaintiff's constitutional rights.  See id. at 1003 (Phillips, J., concurring).  Having reached this conclusion, the court will not address the second prong of the qualified immunity test.  For the foregoing reasons, defendant Lohr-Robinette is shielded by qualified immunity against all claims brought against her in her individual capacity.

**B.  Defendant Randall Proffitt**

As discussed above, government officials who perform discretionary functions are generally protected by qualified

immunity.  Anderson v. Creighton, 483 U.S. 635, 638 (1987).

Courts must consider, first, whether a constitutional right would

have been violated on the facts alleged by the plaintiff, and

second, whether the right asserted was clearly established at the

time of the alleged violation.  Willingham v. Crooke, 412 F.3d

553, 558 (4th Cir. 2005).  Qualified immunity protects "all but

the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986).  Because plaintiff

concedes that under Collinson, defendant Proffitt is entitled to

qualified immunity for removing plaintiff at the direction of

defendant Lohr-Robinette (Doc. No. 53-1 at 15), the court will

only address the issue of plaintiff's arrest.

   While it is clearly established that the "First Amendment

protects a significant amount of verbal criticism and challenge

directed at police officers," the "freedom verbally to challenge

police action is not without limits."  Houston v. Hill, 482 U.S.

451, 461, 463 n.12 (1987).  Speech that does not receive First

Amendment protection, even when directed at police officers,

includes "insulting or 'fighting' words . . . ."  Hill, 482 U.S.

at 463 n.12; Brooks v. N.C. Dept. of Correction, 984 F. Supp.

940, 955 (E.D.N.C. 1997); State ex rel Wilmoth v. Gustke, 373

S.E.2d 484, 487 (W. Va. 1988) ("Clearly, under Hill, every person

has a first amendment right to question or challenge the

authority of a police officer, provided that fighting words or

other opprobrious language is not used.").

Fighting words are defined as those "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942). In Hess v. Indiana, 414 U.S. 105, 106-07 (1973), the Supreme Court held that defendant's shouting "we'll take the fucking street" at an antiwar demonstration was constitutionally protected speech and that the State could not punish the speech as fighting words under its disorderly conduct statute. The Court reasoned that the speech was not directed at the arresting officer, but at the crowd in general. Id.

Courts are divided about whether profane epithets directed at police officers should be considered constitutionally protected speech. The Fourth Circuit has not yet addressed the issue. The Third Circuit has held that a man's First Amendment rights were violated when he was arrested for disorderly conduct after muttering "son of a bitch" at a police officer. Johnson v. Campbell, 332 F.3d 199, 213 (3rd Cir. 2003). The Eighth Circuit similarly has held that calling a police officer an "asshole" was not within the category of fighting words and thus did not provide probable cause for an arrest for disorderly conduct. Buffkins v. City of Omaha, 922 F.2d 465, 472 (8th Cir. 1990); see also Duran v. City of Douglas, 904 F.2d 1372, 1377-78 (9th Cir. 1990)(holding that making obscene gestures and yelling

profanities in Spanish at a police officer was constitutionally protected speech); <u>Sweatt v. Bailey</u>, 876 F. Supp. 1571, 1580 (M.D. Ala. 1995) (calling a law enforcement officer "an ass" to a third person while still within the officer's earshot does not fall within the fighting words doctrine).

By contrast, the Tenth Circuit affirmed a district court decision that yelling "'Mother F* * *ers,' 'F* * * heads,' 'F* *ing pigs,' 'Why don't you run around the track, chubby?,' 'Hey chubby, what's your name?,' 'Hey fatty,' 'Hey fat a* *,' and 'Leave her the f* * * alone,'" at police officers constituted fighting words, rather than constitutionally protected speech. <u>McCormick v. City of Lawrence</u>, 325 F. Supp. 2d. 1191, 1197, 1201 (D. Kan. 2004), <u>aff'd</u> 130 Fed. Appx. 987 (10th Cir. 2005).[7]   The district court noted that the plaintiffs were not just "showing their disapproval of police activity, but also making repeated personal attacks on the officers." <u>Id.</u> at 1201.

---

[7] The district court also cited a string of state court decisions that support its conclusion. <u>McCormick</u>, 325 F. Supp. 2d. at 1201 ((citing <u>Woodward v. Gray</u>, 527 S.E.2d 595, 599-600 (Ga. Ct. App. 2000) (noting that such terms as "son of a b*tch," "motherf* * *er," "bastard," "b*tch," "motherf* * *ing pig," and "pig" constitute fighting words when directed at police) (citation omitted); <u>Commonwealth v. Mastrangelo</u>, 414 A.2d 54, 55-56, 58 (Pa. 1980) (holding that "f* * * ing pig" and other epithets, when directed at a meter maid, constituted fighting words); <u>City of Springdale v. Hubbard</u>,369 N.E.2d 808, 810-12 (Ohio Ct. App. 1977) (calling police officers "f* * *ing pigs" constitutes fighting words)).  Plaintiff, in turn, cites a string of state court decisions that held that swearing at police officers is constitutionally protected speech.  (Doc. No. 45-1 at 10.)

Applying the well-reasoned holdings of the Third, Eighth, and Ninth Circuits, and viewing the facts in a light most favorable to plaintiff, the court determines that plaintiff's offensive speech does not fall within the fighting words doctrine.  Although rude, plaintiff's speech is protected by the First Amendment, which encompasses the right to verbally oppose or challenge police action without thereby risking arrest.  Hill, 482 U.S. at 462-63.

Given that the Supreme Court has continuously narrowed the fighting words doctrine over the past sixty years and has not upheld a fighting words conviction since Chaplinsky was decided in 1942, this court must conclude that the fighting words doctrine must be narrowly construed.  See generally, Street v. New York, 394 U.S. 576 (1969); Cohen v. California, 403 U.S. 15 (1971); see also Texas v. Johnson, 491 U.S. 397 (1989).  Indeed, the Supreme Court has suggested that the fighting words doctrine might require an even narrower application "in cases involving words addressed to a police officer, because 'a properly trained officer may reasonably be expected to exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"  Hill, 482 U.S. at 462 (quoting Lewis v. City of New Orleans, 415 U.S. 130, 135 (Powell, J., concurring)).  Therefore, this court concludes that

directing profane epithets at a police officer does not fall within the fighting words exception to the First Amendment.

Nonetheless, defendant Proffitt is entitled to qualified immunity because at the time of the arrest it was not clearly established that plaintiff's speech was constitutionally protected. First, there is no decision either from the Supreme Court or from any court within the Fourth Circuit that sheds light on the question. Second, the federal circuits and state courts are split over the issue. Defendant Proffitt thus did not have "fair warning" that his conduct violated plaintiff's constitutional rights. See Hope, 536 U.S. at 739-40. Therefore, it cannot be said that a reasonable person in defendant Proffitt's position should have known that arresting plaintiff because of her offensive speech violated her clearly established constitutional rights. See Harlow, 457 U.S. at 818.

Because the court holds that defendant Proffitt is entitled to qualified immunity for his arrest of plaintiff, it does not need to reach plaintiff's argument that plaintiff had the right to resist arrest and therefore should not have been charged with obstruction. (Doc. No. 53-1 at 17.) For the foregoing reasons, defendant Proffitt is shielded by qualified immunity against all claims brought against him in his individual capacity.

**C.  Liability of the Municipality Bramwell**

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978), the Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."  Nevertheless, it also held that municipalities cannot be sued for the acts of their employees.  <u>Id.</u> at 691.  According to the Court, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Id.</u> at 694.

"The mere right of a governing body to control the acts of an official without any control having been exercised is not enough" to make the municipality liable.  <u>Collinson</u>, 895 F.2d at 1004 (Phillips, J., concurring)(citing <u>Monell</u>, 436 U.S. at 694 n.58).  In <u>Collinson</u>, the Fourth Circuit held that where the president of the board of county commissioners ejected a citizen from a public meeting, the municipality was not liable:

> There is no evidence on this summary judgment record that the Board embraced any policy of silencing citizens at public hearings, or that it directly or by knowing inaction condoned Gott's conduct in this case. Nor can Gott's isolated act be considered an exercise of policymaking power by one empowered to "make policy" for the county in the matter at issue.

Collinson, 895 F.2d at 1004 (Phillips, J., concurring)(citations omitted).

Similarly, in this case, plaintiff has provided no evidence that the town council condoned or sanctioned defendant Lohr-Robinette's decision to make plaintiff leave the meeting or defendant Proffitt's arrest of plaintiff.  Although the town council may have had the right to exercise control over their conduct, there is no evidence that it did so here.  Applying Collinson to the facts viewed in the light most favorable to plaintiff, this court must hold that as a matter of law, the town of Bramwell is not liable to plaintiff as a result of defendants' conduct.

Because plaintiff's claims against defendants Lohr-Robinette and Proffitt in their official capacities are duplicative of her claim against the town of Bramwell, they must be dismissed in light of the court's finding that the town of Bramwell is not liable.  See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

### IV. Conclusion

Because the court finds that defendants Lohr-Robinette and Proffitt are entitled to qualified immunity and that Bramwell is not subject to municipal liability, it is proper to grant their motion for summary judgment.  (Doc. No. 47.)  Plaintiff's motion

for partial summary judgment (Doc. No. 44) is hereby dismissed as moot.

The Clerk is directed to mail a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 20th day of December, 2006.

ENTER:

David A. Faber
Chief Judge